UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| MATTHEW HOPKINS,<br><br>    Plaintiff,<br><br>  v.<br><br>NIELSEN HOLDINGS PLC, JAMES A. ATTWOOD, JR., DAVID KENNY, THOMAS H. CASTRO, GUERRINO DE LUCA, KAREN M. HOGUET, JANICE MARINELLI MAZZA, JONATHAN MILLER, STEPHANIE PLAINES, NANCY TELLEM, and LAUREN ZALAZNICK,<br><br>    Defendants. | Case No. _____<br><br>JURY TRIAL DEMANDED |

**COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934**

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. This action stems from a proposed transaction announced on March 29, 2022 (the "Proposed Transaction"), pursuant to which Nielsen Holdings plc ("Nielsen" or the "Company") will be acquired by a private equity consortium led by Evergreen Coast Capital Corporation, an affiliate of Elliott Investment Management L.P., and Brookfield Business Partners L.P.

2. On March 28, 2022, Nielsen's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into a transaction agreement (the "Agreement") with Neptune Intermediate Jersey Limited and Neptune Bidco US Inc. Pursuant to the terms of the Agreement, Nielsen's stockholders will receive $28.00 in cash for each share of Nielsen common stock they own.

3. On May 19, 2022, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission (the "SEC") in connection with the Proposed Transaction.

4. The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading. Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6. This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391(b) because a portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8. Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Nielsen common stock.

9. Defendant Nielsen is a public limited company formed under the laws of England and Wales and a party to the Agreement. Nielsen's common stock is traded on the New York Stock Exchange under the ticker symbol "NLSN."

10. Defendant James A. Attwood, Jr. is Chairperson of the Board of the Company.

11. Defendant David Kenny is Chief Executive Officer and a director of the Company.

12. Defendant Thomas H. Castro is a director of the Company.

13. Defendant Guerrino De Luca is a director of the Company.

14. Defendant Karen M. Hoguet is a director of the Company.

15. Defendant Janice Marinelli Mazza is a director of the Company.

16. Defendant Jonathan Miller is a director of the Company.

17. Defendant Stephanie Plaines is a director of the Company.

18. Defendant Nancy Tellem is a director of the Company.

19. Defendant Lauren Zalaznick is a director of the Company.

20. The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## SUBSTANTIVE ALLEGATIONS

*Background of the Company and the Proposed Transaction*

21. Nielsen is a global leader in audience measurement, data, and analytics.

22. On March 28, 2022, Nielsen's Board caused the Company to enter into the Agreement.

23. Pursuant to the terms of the Agreement, Nielsen's stockholders will receive $28.00 in cash per share.

24. According to the press release announcing the Proposed Transaction:

Nielsen Holdings plc (NYSE: NLSN) ("Nielsen") today announced that it has entered into a definitive agreement to be acquired by a private equity consortium ("Consortium") led by Evergreen Coast Capital Corporation ("Evergreen"), an affiliate of Elliott Investment Management L.P. ("Elliott"), and Brookfield Business Partners L.P. together with institutional partners (collectively

3

"Brookfield") for $28 per share in an all-cash transaction valued at approximately $16 billion, including the assumption of debt.

The Nielsen Board of Directors voted unanimously to support the acquisition proposal, which represents a 10% premium over the Consortium's previous proposal and a 60% premium over Nielsen's unaffected stock price as of March 11, 2022, the last trading day before market speculation regarding a potential transaction. The Board reached this determination following a comprehensive review of the proposal, with the assistance of its independent financial and legal advisors. . . .

The transaction is subject to approval by Nielsen shareholders, regulatory approvals, consultation with the works council and other customary closing conditions. The transaction will also be subject to UK court approval pursuant to a scheme of arrangement. Alternatively, pursuant to the agreement, the parties may elect instead to complete the transaction pursuant to an agreed-upon tender offer. If the closing conditions are met, the transaction is expected to close in the second half of 2022. . . .

Advisors

J.P. Morgan and Allen & Company LLC are acting as lead financial advisors to Nielsen. PJT Partners is also acting as an advisor to Nielsen. Wachtell, Lipton, Rosen & Katz, Clifford Chance LLP, DLA Piper, and Baker McKenzie are serving as legal advisors to Nielsen. Gibson, Dunn & Crutcher LLP and Herbert Smith Freehills LLP are serving as legal advisors to Evergreen and the Consortium, and Davis Polk & Wardwell LLP is acting as legal advisor to Brookfield. BofA Securities, Barclays, Credit Suisse, Mizuho Securities USA LLC, HSBC Securities (USA) Inc., and Citi are serving as financial advisors to Evergreen and Brookfield.

Debt commitments to Evergreen and Brookfield were provided by Bank of America, Barclays, Credit Suisse, Mizuho Securities USA LLC, HSBC Bank USA National Association, KKR Capital Markets, Citi, Nomura Securities International Inc., and Ares Capital Management LLC.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

25.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

26.     As set forth below, the Proxy Statement omits material information.

27.     First, the Proxy Statement omits material information regarding the Company's financial projections.

28. The Proxy Statement fails to disclose: (i) all line items used to calculate the projections; and (ii) a reconciliation of all non-GAAP to GAAP metrics.

29. The disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

30. Second, the Proxy Statement omits material information regarding the analyses performed by the Company's financial advisors, J.P. Morgan ("J.P. Morgan") and Allen & Company LLC ("Allen & Company").

31. With respect to J.P. Morgan's Public Trading Multiples analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies.

32. With respect to J.P. Morgan's Selected Transaction Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions.

33. With respect to J.P. Morgan's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values used in the analysis; (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates; and (iii) the excess cash, minority interest, finance leases, and total debt used in the analysis.

34. With respect to Allen & Company's Selected Public Companies Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the companies.

35. With respect to Allen & Company's Selected Precedent Transactions Analysis, the Proxy Statement fails to disclose the individual multiples and metrics for the transactions.

36. With respect to Allen & Company's Discounted Cash Flow Analysis, the Proxy Statement fails to disclose: (i) the terminal values used in the analysis; and (ii) the individual inputs and assumptions underlying the discount rates and perpetuity growth rates.

37. With respect to Allen & Company's price targets analysis, the Proxy Statement fails to disclose: (i) the price targets observed in the analysis; and (ii) the sources thereof.

38. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.

39. Third, the Proxy Statement fails to disclose the terms of PJT Partners' engagement, including: (i) the amount of compensation PJT Partners has received or will receive in connection with it engagements; (ii) the amount of PJT Partners' compensation that is contingent upon the consummation of the Proposed Transaction; (iii) whether PJT Partners has performed past services for any parties to the Merger Agreement or their affiliates; (iv) the timing and nature of such services; and (v) the amount of compensation received by PJT Partners for providing such services.

40. The omission of the above-referenced material information renders the Proxy Statement false and misleading.

41. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Nielsen

42. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

43. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Nielsen is liable as the issuer of these statements.

44. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

45. The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

46. The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction. In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

47. The Proxy Statement is an essential link in causing plaintiff to approve the Proposed Transaction.

48. By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

49. Because of the false and misleading statements in the Proxy Statement, plaintiff is threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

50. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

51. The Individual Defendants acted as controlling persons of Nielsen within the meaning of Section 20(a) of the 1934 Act as alleged herein. By virtue of their positions as officers and/or directors of Nielsen and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the

7

power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same. The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in the making of the Proxy Statement.

54. By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

55. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act. As a direct and proximate result of defendants' conduct, plaintiff is threatened with irreparable harm.

## **PRAYER FOR RELIEF**

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

8

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C. Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E. Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff hereby requests a trial by jury on all issues so triable.

Dated: June 6, 2022

**RIGRODSKY LAW, P.A.**

By: */s/ Gina M. Serra*
Gina M. Serra
825 East Gate Boulevard, Suite 300
Garden City, NY 11530
Telephone: (516) 683-3516
Email: gms@rl-legal.com

*Attorneys for Plaintiff*